Thank you. May it please the court. I'm Chad Hatfield representing Sandra Valladares, and I do wish to reserve two minutes for rebuttal. I wish to focus my remarks on step three of the sequential evaluation, which considers listings, which contain a predefined set of criteria for establishing disability outside of the RSC in consideration of vocational factors as step four and five. The primary point of contention in this case would be ineffective ambulation, specifically in regards to contracture of the left ankle and left knee under listing 1.02A. Now, just for a brief aside, just to make sure we are clear, Ms. Valladares is not contending that she is not able to ambulate. She can't walk. However, she suffers from post-polio myelitis, resulting in visible deformity and contracture of her left ankle and left knee. Her strength is measured at one out of five, which is defined as an inability for certain movements. The left leg is shorter. It is atrophied with 36 centimeters on the left, compared to 40 on the right for 10% muscle wasting. She has left foot drop. Treatment notes report multiple falls while walking on uneven terrain, and a physical therapy evaluation show the need for two handrails for walking on stairs with her left leg locking at times and needing both hands to help flex her left knee. So the question here is not whether she can ambulate or not ambulate, but whether there is ineffective ambulation. And the listing provided an example, a list of examples of ineffective ambulation, any of which, if present, would satisfy the requirement. In this case, the record demonstrates two of the examples. One is the inability to walk at a reasonable pace on rough or uneven surfaces, and is explicitly established by the ALJ's own findings. The other is the inability to climb a few steps at a reasonable pace without the use of a single handrail. This was not addressed by the ALJ, but it is supported in the record. Now, it's noteworthy that the ALJ does not even mention listing 1.02a or the specific examples of uneven ground or climbing stairs for ineffective ambulation. This court has held in Dobson. It is error for the ALJ to fail to adequately consider the provided examples of ineffective ambulation and 1.002b2 in relation to listing 1.02. Can we go back to that, the example of, from one, I'm gonna get the numbers wrong, but the examples that you were talking about. It says the inability to walk a block at a reasonable pace on rough or uneven surfaces. You said that the ALJ's own findings established that she cannot do that, and I guess I'm not entirely certain that that's correct. You're just referring to the part of the RFC that the ALJ adopted? Because that's different from, I think, what's stated in this example. Well, yes, I think that the RFC, although RFC vocational factors are not considered at step three, it goes to show which part of, she gave significant weight to Dr. Morse's opinion, and it goes to show specifically what she was adopting. She was adopting the opinion that must avoid all uneven terrain. And an RFC is the most acclaimed to do. Dr. Morse, the portion of his, is it his, I think, testimony relating to avoiding uneven surfaces, that was just talking about in the workplace, right? It's not talking about the ability to walk a block at a reasonable pace on uneven surfaces, and that condition, in terms of the kinds of jobs she should do, that makes perfect sense, given her situation, but it just doesn't, there isn't a finding by the ALJ that she had the inability to walk a block at a reasonable pace on rough or uneven surfaces. It's just not, that's not what the ALJ has found. Am I wrong on that? Well, if that's true, then the ALJ made no findings of ineffective ambulation at step three, and that's further error. One thing that is important to note is that 1.002B2, it notes that to ambulate effectively, individuals must be able to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include the ones I've outlined, in addition to being able to use public transportation and other such things. So the point of the listing is, I think with the federal court, the judge made no findings whatsoever, and the federal court, I think, was trying to put in the pieces with some post hoc reasoning here, putting things together, said, well, they did say there's sedentary ambulatory ability in a sedentary workplace. But as we see here, the listing is concerned with the ability to get consistently to the workplace and back. And if there's raised questions of whether an inability person can do that, then it stops there. The listing is met, and disability is granted. We don't go on to further and see if there's ambulation can be done in the office, as these types of activities, walking on rough and arduous surfaces, using public transportation, of course, do not relate to work duties. So in that way, we can see that that was clear error for the federal court to kind of try to find justification by saying that sedentary work was applicable to the listing, where it is clearly not by the wording of the listing itself. The other point is that we do have test treatment notes that state Ms. Valadares has had multiple trips and falls with walking on uneven surfaces in the record. So I think that one's clearly met. The second example is the inability to climb a few steps at a reasonable pace with the use of a single handrail. Again, never addressed by the LGA as reversible error. However, the district court and commissioner pointed to a couple of examples of, for example, one, Sierra 390, she checked the box on a form saying that she could go a flight of stairs, but with pain. However, again, the question is not whether she can go upstairs or not, but it's how she does that. And we have, the record contains two descriptions of her being able, how she's able to ambulate on stairs. One was at the physical therapy evaluation. And during that evaluation, as I referenced earlier, she was shown to have a reciprocal pattern, step pattern. So she'd bring one foot up, bring the other foot to the same step, use of two handrails, and was still having locking of her knee with a timed knee, but bilateral hands to unflex her knee. So that's clearly not an example of being able to at a reasonable place, a reasonable pace. And it's certainly not with one single handrails, it's bilateral handrails. The second description was at the hearing where Ms. Valadares did testify that she does need two handrails to be able to ascend any staircases or descend those. So in those respects, the reasons offered after, well, the ALJ was deficient of findings, but the reasons offered by the commissioner and at the district court should fail for those reasons. And the appropriate remedy in this situation is an immediate payment of benefits as the findings are there. Council, can I ask you one question about the record? Sure. One of the criteria that has to be satisfied under Listing 1.02 is the imaging of joint space narrowing. When Dr. Morris testified, he said he didn't see the MRI that was in the record. Is there imaging in the record that would establish that particular criteria? Well, that's a good question. The point is this is a contracture. It's a visible deformity, a movement of the joint. It's diagnosed by physical examination. We have Dr. Nehera who said that too, physical examination, podiatrist, there's left knee contracture, left ankle contracture. As it is visible by the visible light, we don't use X-ray or MRI evidence to establish a contracture. That just doesn't make sense. And I wanna be careful here to state these listings have been revised, and they do not apply. But under the revised listings, they've changed it to say physical examination of contracture or imaging of things such as spondylosis because there is an imaging for a contracture. So then how do you satisfy this criteria? Well, the appropriate imaging would be the visible inspection. I mean, the image is there before you of an inspection of the knee. I mean, it's locked in a certain position and deformed and inspected. Like I said, they had to clarify that in revision later. The IJ did not address this factor either, did he? No, the ALJ was silent on this. And really, the medical expert, the judge probably would address this because they know that a contracture, you would need X-ray evidence or MRI evidence to find it. It's done by physical inspection and visibly noting it. Okay. That's certainly not addressed. You wanna save the remainder of your time for rebuttal? Yes, please, thank you. Okay, let's hear from counsel for the commissioner. Good morning. May it please the court, my name is Michael Mullen, and I represent the commissioner of the Social Security Administration. I ask that this court uphold the district court's judgment  finding the appellant not disabled. More than a scintilla of evidence supported the ALJ's decision. And so this court should uphold and affirm that decision under the highly differential substantial evidence standard. Appellant's arguments focus on Listing 3 and specifically Listing 1.02a. And so I'll go ahead and begin there as well. There are three criteria for Listing 1.02a. The latter two are really what's at issue here. Judge Paez already touched on the lack of imaging in the record. That alone shows that the appellant has not satisfied this listing. That's very clear in the court's case law in Zebley. Excuse me, counsel. Your opponent said that that omission, if it in fact is an omission, is satisfied by the physical examination by competent medical personnel. What do you say to that? Thank you, Honor. I appreciate that. And I think the reality is that, to my knowledge, Mr. Hatfield is not a medical expert. And his opinion on how to diagnose contracture should not be substituted for the medical opinion of Dr. Morse, who looked for that imaging while discussing whether the appellant met any listings at the administrative hearing. And Dr. Morse testified that in fact, the appellant did not meet any listings. He looked for the MRI or other imaging, and it wasn't there. Mr. Hatfield hasn't cited to it because it wasn't there. And so the appellant hasn't satisfied this required criteria. The third criteria with respect to listing 1.02a, which was also significantly discussed, is plaintiff's inability to ambulate effectively, or rather lack thereof. So the requirement is involvement of one major peripheral weight-bearing joint resulting in an inability to ambulate effectively. I think it's very important to look at Dr. Morse's testimony carefully there. Dr. Morse, on page 48 of the administrative record, testified that the appellant should have limited exposure to, or limited to concentrated exposure to uneven terrain. On the next page, page 49, he explicated that she can ambulate. And he even went on to say that she could occasionally do ramps and stairs. On the next page, on cross-examination, Dr. Morse indicated that appellants should avoid uneven terrain, avoid even moderate exposure to uneven terrain. Now, the appellant latches onto the first part of that statement on page 50, that she should avoid uneven terrain. And indeed, even the ALJ assessed a generous residual functional capacity to reflect Dr. Morse's testimony. But when you read that testimony as a whole, substantial evidence supports the ALJ's no listing findings at step three. In particular, the testimony of Dr. Morse does indicate the plaintiff has the ability to ambulate effectively. Well, there are other places though in the record where it's, I think it's supported that she is not able to walk on uneven terrain without falling and seems to have considerable difficulty  in negotiating that kind of terrain. So, I guess I'm just not, you're saying that there's substantial evidence to support this, the ALJ's finding on this point, but I'm not so sure. So, there is a mixed record, and of course the ALJ had to distill a conflicted record and actually create a concise residual functional capacity and evaluate the step three listings. In this case though, there was also evidence of significant improvement and effective treatment for the claimant. For instance, following physical therapy, she received a COFO brace, a knee ankle foot orthosis. This significantly improved the stability in her knee, it reduced drop foot, it better allowed her to go up and down stairs, and it even was used to relieve some of the potential overloading syndrome that she may have been experiencing in her right foot. And so- Excuse me, counsel. The cause of the joint dysfunction, whatever level it may be at, was the result of her having polio, correct? Yes, your honor. Is there any medical evidence in the record as to whether that condition is likely to improve over time? Polio. Perhaps, the diagnosis I believe is not going anywhere, but perhaps the symptoms related to that diagnosis could be improving over time with treatment. And in fact, Dr. Morse testified that her condition is chronic. And so, no, no, her post-polio syndrome is a chronic feature of her left lower extremity. Yes, your honor. That said, I think it's important to note that the record is also replete with examples of her being able to ambulate effectively. For instance, there's records from a psychological treatment actually indicating that she enjoys going to parks with her children. She enjoys dancing. She has an exercise bike at home that she uses. And so, there are examples that indicate that she may be more capable than alleged. And in fact, certainly there's medical support from not only Dr. Morse's testimony, but also Dr. Price, the podiatrist, who also indicated that plaintiff would, at least strongly suggest that plaintiff would be able to work at a sedentary level. What about the other example, being able to negotiate stairs using just one handrail? What's your response on that point? Yeah, again, that's inconsistent with the medical record, at least in part. I mean, there is no medical opinion indicating that the appellant needs to have two, needs to use two handrails to go up and down stairs. And in fact, Dr. Morse testified that plaintiff could occasionally traverse stairs, whereas the administrative law judge actually generously assessed that she could only rarely go upstairs. And so, I think that is reflected in the residual functional capacity. And again, Dr. Morse's testimony supports the ALJ's findings. I thought there was, though, a note, as your opponent alluded to earlier in the argument, I thought there was a note in the medical records indicating that she needed to hold onto two handrails to get up stairs. Isn't that true? I can't speak to what Mr. Hatfield said. That said, I am aware of several medical records that indicate that, yes, the plaintiff uses handrails. I don't know that they explicate that she needs to use the handrails. Rather, I think it states that she did use two handrails, which I think there's a subtle but important difference there. Okay, so that's Listing 1.02a. I think there is at least a scintilla of evidence supporting the ALJ's finding that the plaintiff had not shown an inability to ambulate effectively. And again, regardless, there is no evidence to support the imaging requirement, which is the second criteria of Listing 1.02a. And so, the court should uphold the ALJ's finding at step three. I'd like to, with the remainder of my time, at least quickly touch on some of the other aspects of the case, in particular, the ALJ's analysis of Dr. Morse's medical opinion. In fact, the decision accurately reflects, and it's very faithful to Dr. Morse's opinion. It was a nuanced opinion, where I explained the different testimony that Dr. Morse had at pages 48, 49, and 50. That's all accurately reflected in the ALJ's decision. The ALJ both found that the appellant had not shown an inability to ambulate effectively, and yet also found in the RFC that the ALJ should avoid uneven ground in the work setting. And that's exactly consistent with Dr. Morse's testimony. And so, the appellant has shown no error  of Dr. Morse's testimony. Similarly, the ALJ provided numerous reasons for discounting the appellant's objective symptom complaints, indicating that her high-functioning daily activities were inconsistent with the severity of her complaints. The ALJ indicated that the medical record was itself inconsistent with her complaints. For instance, she testified that she has to elevate her legs twice a day for at least 30 minutes to relieve swelling, but the medical record was replete with instances showing that, in fact, she had no swelling. And Dr. Morse even testified that given the nature of her chronic condition, elevating her feet wouldn't necessarily provide relief. The ALJ also noted that the severity of her complaints was inconsistent with signs of improvement and effective treatment. In particular, the ALJ noted that medication controlled plaintiff's pain with no side effects. That was reported in the medical record at CARB page 538. And additionally, the appellant received that CAFO, that knee-ankle-foot orthosis, that improved her stability, reduced her drop foot, and the latter to better traverse stairs. Many of the same reasons that the ALJ used in discounting the subjective complaints related to the lay statement. Appellant's arguments at step five are just a reiteration of the other meritless complaints we've discussed. And so in sum, the commissioner asked that this court uphold the district court's judgment and the ALJ's decision-finding of appellant not disabled. Thank you. Okay, thank you very much. Let's put a minute on the clock for rebuttal. You're on mute. Thank you. Just to be clear, I wanna make sure, of course, my reasoning for mentioning the revised listing is not applicable in this case. It's not, it revolves around the judge's decision. It's just showing that I'm not giving medical testimony. It's just showing that they have clarified that, that physical examination is used for contractures, and it says, or imaging is used for other kinds of conditions. There was a straight leg raising in this, and there was complaints of 1.04 involvement, which would use an MRI, which was not, imaging was not found in the record. Again, I think it's important. Although it said Dr. Morris gave testimony that could ambulate effectively, effectively was never part of it. His testimony's around ambulation, and whether it can do stairs, cannot. Again, that's just not the issue in this case, is whether it's able to do so effectively or ineffectively. Ms. Valadares did testify at the hearing, even after this bracing, this is the time of the hearing, she still needed two handrails. This is a progressive condition. She did work after post-polio for a number of times until it progressed to the point she had to stop working. She testified she still needs the bilateral handrails. That was not addressed by the judge. She did not reject that testimony. And it just makes sense that those things, that they find that she should avoid uneven terrain and use of stairs in the workplace. Even more so, it makes sense outside of the workplace, and there's a lot more dangerous situations, such as cracked sidewalks, and stepping on curbs, in such situations. So, for all the foregoing reasons, we ask that an immediate payment of benefits be granted, as the findings would lead to a conclusion of disability, and not invite the opportunity to change findings. I appreciate your time. Okay, thank you very much. The case just argued is submitted.
judges: HAWKINS, PAEZ, WATFORD